Okay, our last case today is Grant v. Huskins. That's case number 4140998. And for the appellant, we have Michael Costello. And for the appellee, Timothy Foreman. Mr. Costello, please. Thank you. May it please the Court. I know the Court's read the facts. The Court's read the briefs. To put it simply, this is a case of custody where Judge Funk out of Lincoln vacated the temporary order of custody of the father and awarded custody to the mother. The history of this case simply is that the child was born with the mother, born, and the mother had custody until January 17, 2014. The child was born, by the way, March 14, 2001. A very young child. On January 17, 2013, Grant filed a order of protection to obtain temporary custody of the child, the reason being the mother had been arrested for drug dealing in Lincoln. Also filed was the family case in which Judge Funk consolidated the order of protection of the temporary custody to Grant in the family case. It proceeded after a length of time to hearing, and Grant contends that the Court's decision to award her custody was against the manifest weight of the evidence, and also an abuse of discretion of the trial court. There were differences in testimony as to whether and when Grant started visitation with the child. He waited until DNA confirmed that he was the father of the child, and according to Grant, he began visitation with the child after two months of that determination after the birth of the child. Other grounds that Grant raised were simply that the mother had been convicted of drug dealing, that she had married a person who was still on probation for drug dealing, and that it was the best interest of the child that he retain custody. The child, upon coming back from visitation when he had custody, he contended there were marks and bruises from the visitation. The appellee contended that, hey, he's got a half-brother and half-sister with the mother, and that to interrupt that would not be in the best interest of the child. The mother complained that he lied to the AG for child support, but the evidence is, according to Grant, no child support was ordered, and frankly, the mother agreed to no child support at that particular time. The complaints made about Grant were that he was an over-the-road, long-distance truck driver, and on occasion he had taken the son along with another person in his truck, and the driving lasted no more than 12 hours. But the child was in the trunk, they would change the diapers of the child, and it was Grant's contention that the child wished to go with him, and he did take them on some long-distance trips. They visited historical sites. There's no contention that the mother was abusive. There's no contention that the father was abusive. Simply, since the child had been with Grant for a year, that he should have kept custody. There is authority, although generally not splitting the children is the norm. There is authority, we've cited, where one child was split, and you would be splitting the child, in this case, from Grant in that born to him when he remarried is another child, very small, under a year. So for those reasons, we believe that the court abused its discretion, and it was against the manifest way of the evidence. There is case law cited by us that states, although it's not controlling, the court can take into consideration the length of time of the temporary visitation. Lastly, he had retained other counsel down in Granite City when he claimed the child was being abused when he came for visitation. That case was consolidated up here with the other family case. I, as counsel, had no knowledge of that action, and the mother's counsel went out and had that case consolidated. It was a venue problem with Judge Funk. Lastly, Judge Funk had represented both parties prior, individually, not on the same case. I could find no case in that particular instance, but we cited that the court should not use personal knowledge he may have obtained from prior representation. That's the canons of ethics. What we argue is this. Anytime you represent a client, you form an opinion of his veracity, his credibility, and what's it all about. He saw the mother separately on a different matter, and he saw the father, Grant, on a different matter. We are arguing that Grant came out second best in judging the credibility, and the court should have refused itself to let someone fresh take a look at the credibility of both parties from Al Inisio. So we argued, and the standard of review on a judge trying to recuse him is preponderance of the evidence. Well, Mr. Cusill, don't you have to show actual prejudice on the part of the trial court? You have to show actual prejudice, yes, Your Honor, Justice. But in this case, you couldn't show it in the matter at hand, and how could you go back and find out? I couldn't question the judge. Did he form an opinion of Grant prior? And Grant probably, in candor, would have come off second best to the mother. I'm sure he did in the trial. Did the judge indicate he didn't remember these particular parties? No, the judge remembered, Your Honor, Justice, and he brought that to the attention of the parties. Grant at first said okay, then down the road he got. After the decision? Changed his mind. He changed his mind after the decision? No, not after the decision, before the decision, Justice. Exactly when was that? Pardon me? What was the timing in relation to the judge's decision? The judge was going to begin the hearing. It was six months at least before the final decision. He filed a motion to recuse. It was, everything stopped. It went to Judge Yoder in Bloomington, and he decided that it came back and the case proceeded. But it was prior, Your Honor. So the judge had not made any type of decision in the case at all when that was filed? He had not made any decisions in regard, I cannot recall if he made decisions, he made decisions more, yes. Not just on scheduling, but he made some decisions on motions, et cetera, prior. It had to be prejudice. And that's our argument in a nutshell. Okay. You will have rebuttal. We'll hear from Mr. Foreman now. Thank you, Your Honor. Counsel, may it please the Court. Good afternoon, Your Honor. I've had the fortune to represent Ms. Huskins throughout the course of this proceeding. I first was, I knew Ms. Huskins from the public defender's office. I'd actually represent the individual with whom she later obtained two of the three children from. When he called me, she'd been thrown in jail. Mr. Huskins, Mr. Grant had taken the child away. I managed to establish visitation for Ms. Huskins so that we continued the bond that was there. The child was now two and a half years old. And Ms. Huskins had raised the child from birth. And as Mr. Costello indicated, Mr. Grant was anything but a doting father. I think he was kind of dragged, crying and bellowing to the DNA test. And after the DNA test, he acknowledged paternity. However, I'd stayed with the case for that entire year. And then with Ms. Huskins, and she was only incarcerated in Lincoln, local county. So the visitations could occur. So her mother and father live in Beeson. So the family would go and visit Ms. Huskins in jail. So the bond continued with the minor child. While the minor child lived with Mr. Grant down in, I think, Granite City at that time. The motions I filed were all before Judge Funk. So now he had prior knowledge of these individuals from his work, I think, as a public defender in Logan County. But he had knowledge of these individuals from the very get-go, because I started filing motions for visitation and so forth. He made very substantive rulings that visitation would be allowed. We had the hearing. Custody was restored. I think primarily because Judge Funk felt the necessity to maintain the family unit. Ms. Huskins had been, I don't know if rehabilitate is the correct word, but she was out of jail. She was clean. We offered drug tests later, and she was clean back living with her parents. Judge Funk looked at the entire situation. That's kind of what I call the totality of the circumstances. And this is kind of a tortured case when it comes to the facts, because there was a lot of in and out, not only between Mr. Costello and myself, but between the litigants. And he awarded custody back to Ms. Huskins. Mr. Grant then took it upon himself at one of the weekend visitations to file an order of protection in Madison County. And the young child was removed forcibly from the family's home in B.C. and taken back to Mr. Grant's home. Of course, I went down there, and under the Supreme Court Rule 900 series, one judge, one family, or one child, trial judges down there immediately agreed with me and said this has got to go back to Lincoln. And the reason I'm kind of going at length there is because when we get back to Logan County, all these decisions have been made. I've gone down and I've wrestled with the O.P. in Madison County. I've had the trial judge down there communicate with Judge Funk in Logan County to make sure that everybody knew that we were on the right page. The case came back to Logan County for further handling, and it was at that point, after Judge Funk had made some very significant decisions in the case, that Mr. Grant filed his motion. So the immediate take on that was, well, you've gotten some adverse decisions here, and now you want to change judges. And that's his right to file any motion he wants. And then we went before Judge Yoder, and Judge Yoder I think gave a very, very fair hearing, and he denied the motion to substitute Judge Funk. That's where we stand today. I think having been a participant, as has Mr. Costello, but I think I might have been just a little bit more involved in some aspects of it, specifically in Madison County. But having gone through the series of circumstances, and that's why I call it, for lack of a better word, the totality of the circumstances, you have this confluence of events. And Judge Funk, as always with a trial court, is the best situated to weigh the parties and to establish who should be the responsible parent, the custodial parent. And I will note, as Mr. Costello noted, I do recall, and I think some people are questioning my memory, I do recall being in the courtroom when Judge Funk brought it up again to the parties, as Mr. Costello indicated, that he had represented both parties previously. Both parties were present by counsel. Clients were consulted. My client absolutely had no problems. Of course, we were on a winning streak. We liked Judge Funk. Why would we change? And Mr. Grant, and I don't know if Mr. Costello will say anything, but Mr. Grant nodded in the affirmative. In any case, the agreement was made that we were going to proceed, that Judge Funk need not be recused. And that's where we are today. I think that, obviously, Judge Funk's trial court decision is correct, simply because he could see everything that was going on, and it allowed him to measure the veracity of the individuals and their personalities. I don't see where Judge Funk, in any way, shape, or form, brought in any prior prejudices that he may have had, because, to be honest with you, Your Honors, if he had prejudices against Mr. Grant, he likely had prejudices against Ms. Huskins, because while Mr. Grant lives down there, Ms. Huskins, unfortunately, is one of those individuals who, up until the time of this, kind of in and out of the situation with juvenile cases and DCFS and so on and so forth. So he knew who she was, and I don't think he carried any grudge against her. I certainly didn't see any grudge against Mr. Grant. And I think the record would well reflect that not only was Mr. Costello given an adequate opportunity to argue his side of the case, but I was too. I think the issues were properly vetted. I think the manifest weight of the evidence stands in favor of leaving this young man with his family, his two other siblings, and his mother, who's now married, and they live with the custodial grandparents. So I'm asking that the appellate court support or affirm the trial court, allow the minor child to remain where he is, and also to find that the decision by the trial court to not recuse Judge Funk was correct. Thank you, Your Honors. Thank you, Mr. Foreman. Mr. Costello, do you have any rebuttal? Two comments. First, the child was not taken away by Grant. It was taken away by a court of competent jurisdiction. Secondly, I neglected to say this. The two other children that Mrs. Huskins has, they're older, they were taken away from her by DCFS and given to the father. However, the father, I believe the evidence showed, delivered them about six to eight months later to the emergency room at the hospital in Lincoln and walked away. Well, obviously, the children went back to Mrs. Huskins. But they were taken away by DCFS for inappropriate behavior, and I think that should count for something. That's all I have. Unless the court has any other questions, thank you. I see none. Thanks to both of you. The case is submitted, and the court will stand in recess until further call.